**CAIR LEGAL DEFENSE FUND**
Lena F. Masri (DC Bar # 1000019) (*pro hac vice*)
    lmasri@cair.com
Gadeir I. Abbas (VA Bar # 81161) (*pro hac vice*)*
    gabbas@cair.com
Carolyn M. Homer (DC Bar # 1049145) (*pro hac vice*)
    chomer@cair.com
453 New Jersey Ave., SE
Washington, DC 20003
Phone: (202) 742-6420
Fax: (202) 379-3317
    * *Licensed in Virginia, not D.C.*
      *Practice limited to federal matters.*

**GAIRSON LAW, LLC**
Jay Gairson (WA Bar # 43365)
    jay@gairson.com
4606 Martin Luther King Jr Way S.
Seattle, WA 98108
Phone: (206) 357-4218

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## SEATTLE DIVISION

| | |
|---|---|
| DAMARIO ROBERTS (Inmate # 398950); *et al.*,<br><br>                    Plaintiffs,<br><br>          v.<br><br>STEPHEN SINCLAIR, in his official capacity as Secretary of the Washington Department of Corrections; *et al.*,<br><br>                    Defendants. | Civil Action No.  18-cv-00837-RSM<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY AND PERMANENT INJUCTIVE RELIEF**<br><br>**Motion Noted:**  August 2, 2019 |

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................................. ii

INDEX OF EXHIBITS .................................................................................................................. iii

INTRODUCTION ........................................................................................................................... 1

STATEMENT OF MATERIAL UNDISPUTED FACTS ............................................................... 1

    A.    Plaintiffs' Sincere Religious Beliefs Require Fasting During Ramadan ................................. 1

    B.    The WSDOC Ramadan Sign-Up Process Is Intentionally Designed to Restrict Inmate Participation in the Ramadan Meal Program ................................................................. 2

    C.    Defendants Denied Plaintiffs' Participation in Ramadan ................................................. 5

    D.    Defendants Denied Other Inmates' Participation in Ramadan ........................................ 7

    E.    Ramadan Meal Logistics .................................................................................................. 9

ARGUMENT ................................................................................................................................. 10

  I.    Defendants' Ramadan Policies and Practices Violate RLUIPA .......................................... 10

    A.    RLUIPA Requires Defendants to Accommodate Ramadan Fasting .............................. 10

    B.    All Plaintiffs Are and Were Muslims who Adhere to One of the Five Pillars of Islam Directing Adherents to Fast During Ramadan ................................................................ 11

    C.    Without food after sunset, Defendants Substantially Burden The Ability of Muslim Inmates to Observe Ramadan's Fast .............................................................................. 11

    D.    Because Depriving Muslim Inmates of Food Consistent with their Religious Beliefs Substantially Burdens RLUIPA rights, Defendants Must Identify a Compelling Interest—a Showing They Cannot Make ......................................................................................... 13

    E.    Even the Court Identifies a Compelling Interest, Defendants Unthinking Obedience to their Past Ramadan Practices Shows that Less Restrictive Means were Available to Them ...... 15

  II.    Defendants' Policies Starve Fasting Muslim Inmates in Violation of the Eight Amendment 16

  III.    Defendants Violate the Equal Protection Clause and Free Exercise Clause .................... 18

  IV.    Defendants Are Not Entitled to Qualified Immunity ...................................................... 19

CONCLUSION ............................................................................................................................. 21

PLAINTIFFS' MEMORANDUM ISO SUMMARY JUDGMENT

1

### INDEX OF EXHIBITS

2

| # | Exhibit Title | Date |
|---|---|---|
| 1 | Plaintiffs DOC Medical Records | June 12, 2018 |
| 2 | Washington DOC Stewart Ramadan 2018 Memo | January 16, 2018 |
| 3 | Email Chains Approving or denying addition to Ramadan 2018 List | January 28, 2018 |
| 4 | Correspondence Log system concerning plaintiff Mohamed for Ramadan 2016 | May 31, 2016 |
| 5 | Correspondence Log system concerning plaintiff Mohamed for Ramadan 2018 | May 14, 2018 |
| 6 | Jeremy Livingston's Emergency Complaints | May 16, 2018 |
| 7 | Mohamed Mohamed's Grievances | May 30, 2018 |
| 8 | Damario Roberts's Emergency Complaints | May 21, 2018 |
| 9 | Naim Lao's Grievances and Emergency Complaints | May 30, 2018 |
| 10 | John James's initial and Emergency Complaints | June 12, 2018 |
| 11 | Dietary Guidelines for Americans 2015-2020 | December 2015 |
| 12 | State of Washington DOC Religious Programs Policy | February 17, 2014 |
| 13 | Jay Greer's Grievances | August 9, 2018 |
| 14 | Plaintiffs Kiosk Messages | May 24, 2018 |
| 15 | State of Washington DOC Offender Grievance Program Policy | March 3, 2018 |
| 16 | Email Chain regarding changes to DOC Food Service Policy 240.100 | July 13, 2018 |
| 17 | 2018 Ramadan Menu | |
| 18 | Washington DOC Stewart Ramadan 2019 Memo | January 9, 2019 |
| 19 | Ogechi Njoku Deposition | May 29, 2019 |
| 20 | Belinda Stewart Deposition | May 29, 2019 |
| 21 | Belinda Stewart 30(b)(6) Deposition | June 21, 2019 |
| 22 | Brent Carney Deposition | May 29, 2019 |
| 23 | David Sherman Deposition | May 30, 2019 |
| 24 | Peter Maxson Deposition | May 30, 2019 |
| 25 | Plaintiff Jeremy Livingston Deposition | June 7, 2019 |
| 26 | Plaintiff John James Deposition | June 10, 2019 |
| 27 | Plaintiff Mohamed Mohamed Deposition | June 7, 2019 |
| 28 | MCC Michael Obenland Deposition | June 10, 2019 |
| 29 | WDOC Brad Simpson 30(b)(6) Deposition | June 19, 2019 |
| 30 | WDOC Dale Caldwell 30(b)(6) Deposition | June 19, 2019 |
| 31 | WDOC Brent Carney 30(b)(6) Deposition | June 19, 2019 |
| 32 | WDOC Lynda Heise 30(b)(6) Deposition | June 21, 2019 |
| 33 | Plaintiff Naim Lao Deposition | June 20, 2019 |
| 34 | Plaintiff Demario Roberts Deposition | June 6, 2019 |
| 35 | Washington DOC Stewart Ramadan 2019 Memo | January 9, 2019 |

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' MEMORANDUM ISO SUMMARY JUDGMENT

**INTRODUCTION**

One of the five pillars of Islam is that Muslims fast during Ramadan.  Plaintiffs Damario Roberts, Mohamed Mohamed, Jeremy Livingston, Naim Lao, and John James are all sincere Muslims who observe the Ramadan fast.  But Defendants, all officials and employees of the Washington Department of Corrections, refused to feed them accordingly.  So when given the choice between starving and violating their religious faith, Plaintiffs chose to starve.  Fasting during the day and unable to eat at night, Plaintiffs lost significant weight and became sick with malnourishment. They were forced to purchase their own food and beg for other inmates to share food, against policy, to survive.  They did this all because Defendants imposed, and continue to impose, onerous and intrusive requirements for inmates to participate in Ramadan.

These requirements are illegal.  They are without justification.  Defendants did not refuse to feed Plaintiffs because it was too difficult.  They acknowledge they always have enough food on hand, and that it's easy to take a halal meal out of the freezer, heat it up after sunset, and feed fasting Muslim inmates.  Instead Defendants refused to feed Plaintiffs because of their irrational, bureaucratic policies.  After all, the Defendants reasoned, it was Plaintiffs' choice to starve. Defendants gave themselves discretion to disagree with Plaintiffs' religious beliefs, suggesting "Allah is all merciful" and will forgive Plaintiffs if – due to Defendants' refusal to provide Ramadan meals – Plaintiffs violate their faith by eating lunch.

The U.S. Constitution and the Religious Land Use and Institutionalized Persons Act forbid the Washington Department of Corrections from substituting the Government's discretionary opinions regarding religious accommodations for Muslims' actual religious practice of Ramadan.  The Department is required to accommodate fasting inmates, not starve them.

This Court should enter summary judgment on liability against all Defendants and enjoin the WSDOC from adopting or implementing any policy which prevents Muslim inmates from fasting during any future Ramadan.

**STATEMENT OF MATERIAL UNDISPUTED FACTS**

**A.      Plaintiffs' Sincere Religious Beliefs Require Fasting During Ramadan**

1.      All the Plaintiffs are practicing Muslims who sincerely believe that observing the

- 1 -

Case 2:18-cv-00837-RSM  Document 79-1  Filed 07/09/19  Page 5 of 24

Ramadan fast is required by their religious faith. Livingston Dep., Ex. 25, 27:24-30-25; Mohamed Dep., Ex. 27, 21:20-22:25; James Dep., Ex. 26, 8:8-8:13, 20:3-20:11; Lao Dep., Ex. 33, 24:20-26:5; Roberts Dep., Ex. 34, 12:18-13:7, 23:5-23:7.

2.      In accordance with their Islamic faith, Plaintiffs, along with Muslims worldwide, observe Ramadan as a month of fasting. *See* Ramadan Memo, Ex. 2 at 5. During Ramadan, "participating Muslims refrain from eating and drinking from dawn until sunset." *Id.* According to the sincerely-held religious beliefs of the plaintiffs, Muslims fast "for the sake of God." *Id.* Though Muslims fast from dawn until sunset, Muslims are permitted to consume food and drink liquids during the remaining hours of the day (sunset until dawn). *Id.*; *see also* Obenland Dep., Ex. 28, 22:5-23:13 (explaining Ramadan).

**B.      The WSDOC Ramadan Sign-Up Process Is Intentionally Designed to Restrict Inmate Participation in the Ramadan Meal Program**

3.      Each year, the Washington Department of Corrections issues a Memorandum from the Corrections Program Administrator and the Food Services Administrator addressed to "All Incarcerated Individuals." Stewart Dep, Ex. 20, 63:20-25, 64:1-2. The Memorandum (the "Ramadan Memo") explains the Ramadan sign-up process that inmates are required to follow in order to be added to the Ramadan Meal Program. It sets a sign-up deadline for two weeks after the issuance date of the Ramadan Memo. Stewart Dep., Ex. 20, 32:12-24, 52:19-54:18. Attached to the Ramadan Memo is a Ramadan Meal Request Form the inmates are required to fill out as part of the sign-up process. Stewart Dep., Ex. 20, 34:17-37:9; Ex. 2 at 1-3.

4.      The Department and WDOC headquarters do not follow up with any of the twelve correctional facilities to ensure the Ramadan Memo is in fact posted in visible areas. Stewart Dep., Ex. 20, 40:6-41:17, Sherman Dep., Ex. 23, 41:19-24, 56:4-22. In 2019 the Department conducted a focus group at the Washington State Penitentiary and concluded the facility had failed to post the Ramadan Memo, but did not follow-up regarding other facilities' compliance. Stewart 30(b)(6) Dep., Ex. 21 at 46:7-47:7, 47:24-48:19. In fact, Defendant Sherman, Chaplain of Monroe Correctional Complex ("MCC") responsible for posting the Ramadan Memo at his facilities, acknowledged that he never verified whether the Ramadan Memo was ever posted at any of MCC's units. Sherman Dep., Ex. 23

- 2 -

PLAINTIFFS' MEMORANDUM ISO SUMMARY JUDGMENT

at 56:4-22.

5.      Upon being hired as the Correctional Program Administrator in 2012, Defendant Stewart added criteria for participation in the Ramadan Meal Program.  Stewart Dep., Ex. 20, 36:6-37:9.  The added criteria have not been changed since, remaining the same in 2019.  Stewart Dep., Ex. 20, 64:3-17; Stewart 30(b)(6) Dep., Ex. 21, 6:25-7:2; Ramadan 2019 Memo, Ex. 35.

6.      Inmates are eligible to participate in the Ramadan Meal Program if they satisfy one of two criteria as of the date of the Ramadan Memo: "Ramadan participant approval will be based on participation in Islamic/Muslim religious programming over the past six (6) months or those currently on a halal meal."  Stewart Dep., Ex. 20, 37:25-38:17, 64:10-14; see ex. Ex. 2 at 1-3.

7.      Defendant Stewart added the criteria as requirements to the Ramadan Sign-Up Process in order "to try to weed out individuals who don't practice the faith," and to ensure that only people who are "practicing some aspect of the faith" and "have some sort of sincerity toward the faith" are added.  Stewart Dep., Ex. 20, 43:1-21, 50:17-52:24.

8.      An inmate can be denied participation in the Ramadan Meal Program based on how they answer the questions on the Ramadan Meal Request Form that pertain to criteria eligibility.  Stewart Dep., Ex. 20, 37:11-16.  *See, e.g.,* Ex. 2. at 3.

9.      An inmate who immediately signs up for Islamic religious programming after the Ramadan Memo is issued cannot satisfy the first criteria of "participation in Islamic/Muslim religious programming over the past six (6) months."  Stewart Dep., Ex. 20, 47:18-48:21.

10.      An inmate who immediately signs up for a halal meal diet after the Ramadan Memo is issued cannot satisfy the second criteria of being "currently on a halal meal," and would therefore only be permitted to participate in the Ramadan Meal Program if they attended Islamic/Muslim religious programming for six months prior to the date of the Ramadan Memo.  Stewart Dep., Ex. 20, 41:18-43:5.

11.      The religious diet sign-up period occurs twice a year (November to April 15 and May to October 15) and the religious diet is implemented twice a year (May 1 and November 1).  Stewart Dep., Ex. 20, 55:5-56:21. An inmate who signs up for a halal diet during the current religious diet sign-

PLAINTIFFS' MEMORANDUM ISO SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

up period and before the date of the Ramadan Memo and whose halal diet will not be implemented until after the date the Ramadan Memo is issued, cannot satisfy the second criteria of being "currently on a halal meal." Stewart Dep., Ex. 20, 38:10-25, 42:8-24.

12.     Participation in the Islamic religious holidays Eid al-Fitr or Eid al-Adha is not enough to qualify an inmate to participate in the Ramadan Meal Program. Stewart Dep., Ex. 20, 116:22-25.

13.     Nor is possession of Islamic religious items or an affidavit from a Muslim religious leader confirming the inmate is a Muslim enough to qualify an inmate for participation. Stewart Dep., Ex. 20, 117:1-9.

14.     If a facility chaplain believes an exception should be applied to allow an inmate to participate in the Ramadan Meal Program, they are required to contact Defendant Stewart's office to explain the reasons for the exception. Stewart Dep., Ex. 20, 59:13-60:19. Someone from Defendant Stewart's office would then decide whether to allow that inmate to participate. *Id.*

15.     In 2018, Ramadan began on May 16. The Ramadan Memo was issued on January 16, 2018 and inmates had until 5 pm on January 30, 2018 to sign-up to participate in the Ramadan Meal Program. Ex. 2. Facility chaplains had a separate deadline of February 15, 2018 to submit a request for an exception to Defendant Stewart's office for consideration. Stewart Dep., Ex. 20, 69:12-25 to 70:1-16. "No signup forms [were] accepted after February 15, 2018. Inmates are not notified of the deadline set for chaplains to submit requests for exceptions. Stewart Dep., Ex. 20, 69:12-25 to 70:1-16.

16.     An inmate that has been denied from participating in the Ramadan Meal Program will not receive any Ramadan meals. Stewart Dep., Ex. 20, 67-68. The Department does not provide inmates that choose to fast Ramadan but missed the sign-up period with any food to eat that they can consume from sunset to sunrise, in accordance with their sincerely held religious beliefs. Stewart 30(b)(6) Dep., Ex. 21 at 10:4-12.

17.     An inmate prescribed a medical diet is forced to choose between (a) maintaining their health by continuing their medical diet and sacrificing their sincerely-held religious beliefs by not participating in the Ramadan Meal Program and (b) participating in the Ramadan Meal Program and

PLAINTIFFS' MEMORANDUM ISO SUMMARY JUDGMENT

sacrificing their health by discontinuing their medical diet.  Stewart Dep., Ex. 20, 63:3-12.

18.     When asked what options an inmate has to sustain himself if he has a sincerely-held religious belief that he is prohibited from eating during daylight hours during the month of Ramadan and he was also denied from getting meals during nighttime hours, Defendant Sherman responded that "[h]is options would be to eat the mainline food that's coming in.  That Allah is called merciful and that he would understand that he did not have any other options in order to sustain himself and that he would then be required to – that he would be forgiven for eating during non-Ramada[n] hours or days."  Sherman Dep., Ex. 23 at 122:18-25, 123:8-13.

C.     **Defendants Denied Plaintiffs' Participation in Ramadan**

19.     Damario Roberts was denied multiple grievances for being denied participation in Ramadan 2018.  In one of those grievances, he stated "I am a practicing Muslim and Chaplain Sherman refuses to put me on the ramadan list because I have not gone to 6 straight months of jumah, It is not against my religion not to go to jumah. It is not against my religion not to go to jumah and I am fasting for ramadan.  I am not getting fed through DOC."  Ex. 8.

20.     Mohamed was denied grievances he filed during 2017 and 2018 regarding participation in Ramadan.  In his grievance filed May 30, 2018, he stated "[t]his is the second year am going thru this process and they keep not putting me on the Ramadan list after I filled out the form before the deadline. I can't go to regular mainline because I can't bring the food back and I'll get infracted.  I can't eat after sundown and I have no food to practice my religion.  This is mandatory to fast the month of Ramadan. I spoke with the Chaplain and told me he can't help."  Defendants Sherman and Maxson denied this grievance despite confirming that he met the religious event participation requirement because "Chaplain Fischer stated he searched his office for the form and was unable to find a Ramadan Meal request form."  Ex. 7.

21.     Jeremy Livingston was denied an emergency grievance he filed during Ramadan 2018 for being denied Ramadan meals.  Livingston had sent numerous messages complaining over the prior months to Defendant Sherman and others that he keeps being placed on callout for Christian services when he has repeatedly requested to be placed on callout for jumu'ah prayer.  Nonetheless, Defendant

PLAINTIFFS' MEMORANDUM ISO SUMMARY JUDGMENT

Sherman denied his request to participate in Ramadan based on failure to meet the six month Islamic event participation criteria. Ex. 6; Ex. 14l Sherman Dep., Ex. 23 at 175:4 to 182:7.

22.     Defendant Sherman testified he initially denied Mohamed's grievance because he didn't find a record of his participation in jumu'ah services at that time because Mohamed was likely "slipping out and going to Jumah" instead of going to his GED classes.  Sherman Dep., Ex. 23 at 158:12-22. Ex. 14.

23.     Naim Lao filed multiple emergency grievances regarding the denial of his participation in Ramadan, all of which were denied.  "Yesterday I was feeling dizzy and my limbs were tingly and approached [sic] Sargent Parks stating that there is something clearly wrong with me and that I am about to pass out and explain to him what was going on and he said that if I don't start eating then sooner or later they are going to have to force feed me.  My friend Vincent had to help me walk the rest of the way back to my cell… There is no need to force feed me just let me bring some food back to the cell and I will eat when my religion allows it.  Please feed me.  This is the fourth day in a row that DOC has yet to feed me for ramadan and I am very HUNGRY."  Lao Dep., Ex. 9.

24.     John James has Celiac's Disease, which requires him to eat a gluten-free diet.  James Dep., Ex. 26 at 89:5-13.  Nevertheless, James was denied multiple grievances filed over the course of several years to obtain gluten-free meals during Ramadan.  James Dep., Ex. 26 at 107:12-20; Stewart Dep., Ex. 20 at 142:11-143:19; Stewart 30(b)(6) Dep., Ex. 21 at 57:11-14; 58:13-16; 60:17-25; Ex. 10. WSDOC's policy does not allow "alternative meals" during Ramadan, which the Department deems "special meals for special people."  Stewart Dep., Ex. 20, 60:21-61:22.  The WSDOC had no other reason besides its "no special meals for special people" rule to deny this request.  This is even though it is not difficult for WSDOC to accommodate a single request of a Ramadan gluten-free meal for the month of Ramadan.  Stewart Dep., Ex. 10; Ex. 20 at 144:6-147:8. In one of multiple grievances that were denied, filed during Ramadan 2015, he stated "I want to grieve against SCCC Food Service for poisoning me… I began experiencing extreme diarrhea, head achs [sic] and body pains. Which lead to throwing up… PA Erin Lystad examined me and… told me I had food poisoning… I told her all I've had to eat since 6-17-2015 was Ramadan meals."  Ex. 10 at 13.

25.     In 2014, WSDOC modified its Religious Programs Policy (Policy No. DOC 560.200) to "[a]djust[] that therapeutic diets take precedence over religious diets unless refused at the time of medical encounter."  Thus, inmates are forced to choose between their prescribed medical diet and their religious dietary needs.  This modification was made despite WSDOC having only received a single request – by Plaintiff John James – for a Ramadan diet to also be a therapeutic diet.  Stewart 30(b)(6), Ex. 21 at 57:6-25 to 58:10-20; Sherman Dep., Ex.  23 at 10:14-17; Ex. 12 at 1; Simpson Dep., Ex. 29 at 88: 8-12.

**D.     Defendants Denied Other Inmates' Participation in Ramadan**

26.     On January 28, 2018, Chaplain Luce submitted a request to Defendant Stewart for guidance as to whether an exception can be given to Inmate Vader stating:

> … [H]e has not attended any Muslim services at all, and is not on Halal diet… He said he did Ramadan in the past; on OMNI he did Ramadan in 2013 and 2015.  He said he grew up in an African-American foster home and did Ramadan on the street.  However he is clear that he is not a practicing Muslim.  From his description he is more like Bahai where all religions are one.  Because of this I gave him information on the Baha'i The Fast which is coming up in March and encouraged him to think it over.  Please provide guidance to me as to if I can deny him or should add him specifically for Ramadan as an exception to the Islamic faith.  The tension would be that he does not pray to Allah and does not recognize Allah as God per se.  This might offender our Muslim men, rightfully so. Ex 3 at 4145.

Stewart responded "I do not understand why you need guidance.  The answer is 100 percent evident."  Inmate Vader was denied participation.  Stewart Dep., Ex. 20 at 78:2-80:18. Ex. 3 at 4147-4147.

27.     On May 16, 2018, Defendant Stewart removed Inmate Hussein from participating in the Ramadan Meal Program without explanation despite having been added as an exception the day prior by the Superintendent of that correctional facility.  Stewart Dep., Ex. 20 at 81:21-82:20; Ex. 3 at 9680-9681.

28.     Defendant Stewart denied Inmate Costello from participating in the Ramadan Meal Program despite Chaplain Jakstas of Larch Corrections Center requesting an exception be made on the basis that he was admitted to the Department after the Ramadan sign-up deadline: "I'm not adding Costello because he did not meet the requirement of signing up on time… [Statewide Muslim Chaplain] Rasheed, I believe you said at one time a new convert should not participate in Ramadan

**PLAINTIFFS' MEMORANDUM ISO SUMMARY JUDGMENT**

until they know more about the faith as it will be too hard on them." Ex. 3 at 9796-9801.  Defendant

Stewart explained that "[she] did that based on conversations that I had in the past with Chaplain

Rasheed, and he said new converts should not be added the first year... new converts should not be –

should not go through Ramadan during early on in their conversion because it is too hard to do that

30-day fast.  They have no idea of the magnitude of what it takes to do that."  Stewart Dep., Ex. 20 at

87:10-90:12.

29.     In the same email, Defendant Stewart's staff added two other inmates Chaplain Jakstas

had identified along with Inmate Costello to participate in the Ramadan Meal Program because they –

like Costello – arrived at the Department after the sign-up period.  Stewart Dep., Ex. 20 at 87:10-92:11;

Ex. 3 at 9796-9801.

30.     Inmate Rollins was denied participation in Ramadan in 2017 because he did not meet

the criteria for sign-up.  Ex. 3 at 7634-7635; Stewart Dep., Ex. 20 at 97:8-101:21. He explained in his

grievance: "I received a message back from Chaplain Wakeman…that due to me not participating in

the Islamic Juma service within the last six (6) months that I won't be allowed to participate in

Ramada[n].  I am not Sunni, nor Shiite Muslim.  However, I am A Nation of Islam Muslim… This

facility does not provide a Juma service for those of us who are Nation of Islam Muslims."  Ex. 3 at

7624-7629.  The Level I denial of his grievance states that "[d]ue to limited resources preference will

be given to those who have participated in Islamic/Muslim religious programming over the past 6

months or those currently on a Halal meal… As discussed during your interview, you did not meet the

initial requirements.  No further action will be recommended at this time."  Ex. 3 at 7624-7629.

Defendant Stewart, in her Level III response, stated that she concurred despite acknowledging that

services for members of Nation of Islam are not provided at the facility.  Inmate Rollins was denied

again in 2018 for the same reason.  When asked about these denials during her deposition, Defendant

Stewart said that she doesn't agree with the decision and that "[h]e should have been added."  Stewart

Dep., Ex. 20 at 97:8-101:21.

31.     Defendant Sherman and Defendant Maxson denied Inmate Mitchell participation in

the Ramadan Meal Program despite Mitchell stating that he was in segregation during the sign-up

- 8 -

period, did not see the Ramadan Memo, was not aware of the sign-up period and that he had signed up for the Ramadan Prayer List not realizing it was different than the Ramadan Meal List. Sherman Dep., Ex. 23 at 113:22-25 to 115:1-17; Ex. 3 at 10264, 10267-10270, 10279, 10281-10282, 10284-10290. Sherman explained that "[h]e has to deal with his honesty, lack of honesty, sincerity, whatever the factors were that led to him being in the hole, to not signing up for the list… Allah is going to understand that, and that's the merciful side." Sherman Dep., Ex. 23 at 126:17-23.

32.     Defendants Sherman and Maxson denied Inmate Greer participation in the Ramadan Meal Program based on failure to meet the six month Islamic/Muslim religious programming attendance requirement, even though he fasted during Ramadan two years prior. Sherman Dep., Ex. 23 at 141:5-25, 143:1-8; Ex. 13.

**E.     Ramadan Meal Logistics**

33.     A Ramadan meal is just a Halal meal. Heise Dep., Ex. 32, 37:2-38:25; Stewart Dep., Ex. 20, 62:2-10. The only difference is that instead of having three or more meals a day, at Ramadan there are only two significant meals, the Suhoor (morning meal) and the Iftar (evening/break fast meal). Heise Dep., Ex. 32, 37:2-9.

34.     Halal meals are kept frozen on site at the correctional facilities. Heise Dep, Ex. 32, 35:14-21. Each costs about $1.50. Simpson 54:12-25. They can be ordered in as short as one week in advance. Heise Dep., Ex. 32, 47:6-13. There is always enough. Heise Dep., Ex. 32, 20:20-23:3; 35:14-36:22. The inmates heat up their own food without a problem. Heise Dep., Ex. 32, 46:14-18; Stewart Dep., Ex. 20, 61:5-9. If the inmates could not heat them up, there is no issue with The WSDOC doing so. Heise Dep., Ex. 32, 39:16-17.

35.     To the extent they require more halal meals, The WSDOC can just order additional food. Heise Dep., Ex. 32, 47:6-13. To the extent the prison orders too many Ramadan meals, the Ramadan meals can simply be repurposed as ordinary halal meals. Heise Dep., Ex. 32, 38:14-25. The cost effects are minimal, and The WSDOC has not calculated any additional cost to add anyone to the Ramadan List. Heise Dep., Ex. 32, 27:25-29:6.

36.     There is no administrative problem requiring any significant lead time to prepare.

- 9 -

Indeed, in 2019, the prison needed more Ramadan meals and with one phone call those meals arrived within a couple of hours.  In 2018, The WSDOC was forced by court order to add people at the last second to the Ramadan List, and yet The WSDOC could not identify any additional costs or problems with compliance.  Obenland Dep., Ex. 28, 43:17-46:16; Stewart 30(b)(6) Dep., Ex. 21, 26:2-27:7.  In 2019, the Monroe Correctional Complex added six inmates to the Ramadan list the first week of Ramadan, Obenland Dep., Ex. 28, 15:21-17:13,  and there were zero logistical problems, Obenland Dep., Ex. 28, 28:2-13.

37.     Department of Corrections creates menus with a range of caloric levels to meet the needs of most of their population.  Carney Dep., Ex. 22, 8:7-9. The WSDOC use nutritional standards for their menus that come from established dietary guidelines. Carney Dep., Ex. 22, 13:6-20. And there is no reason that The WSDOC could not do the same for Ramadan meals.  Carney Dep., Ex. 22, 20:13-19.

## ARGUMENT

In ruling on a motion under Rule 56, summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

### I.     Defendants' Ramadan Policies and Practices Violate RLUIPA

For reasons no greater than marginal administrative convenience, knowing the pain it will cause the many Muslim inmates who observe Ramadan's fast, Defendants deprived Plaintiffs of food.  In doing so, they violate RLUIPA, the law Congress passed to ensure prisons and jails across the country allow inmates in custody to practice their faith.

### A.     RLUIPA Requires Defendants to Accommodate Ramadan Fasting

RLUIPA exists to make it illegal for the Department to do what it has done here: deprive Muslim inmates of food, and sometimes even water, between sunset and dawn so the inmates may observe the Ramadan fast during the day.  Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc creates a private cause of action for such persons who allege that a state government has substantially burdened their religious conduct. 42 U.S.C. § 2000cc-1(a),

PLAINTIFFS' MEMORANDUM ISO SUMMARY JUDGMENT

2(a). Unlike cases arising under the Free Exercise Clause of the First Amendment, RLUIPA applies even where the burden on the prisoner "results from a rule of general applicability." 42 U.S.C. § 2000cc-1(a).

To establish a claim under RLUIPA, a plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion, and (2) that the challenged practice substantially burdens that exercise of religion. 42 U.S.C. § 2000cc-2(b). Once a plaintiff has established this *prima facie* case, a defendant bears the burden of proving that imposition of the burden is in "furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2).

**B.    All Plaintiffs Are and Were Muslims who Adhere to One of the Five Pillars of Islam Directing Adherents to Fast During Ramadan**

All of the Plaintiffs are Muslims who believe that observing the Ramadan fast is required by their faith. Livingston Dep., Ex. 25, 27:24-30-25; Mohamed Dep., Ex. 27, 21:20-22:25; James Dep., Ex. 26, 8:8-8:13, 20:3-20:11; Lao Dep., Ex. 33, 24:20-26:5; Roberts Dep., Ex. 34, 12:18-13:7, 23:5-23:7. It is why, in spite of Defendants failure to provide them food, they maintained their fast through substantial weight loss and symptoms of malnutrition and starvation.

**C.    Without food after sunset, Defendants Substantially Burden The Ability of Muslim Inmates to Observe Ramadan's Fast**

In passing RLUIPA, Congress required that all prisons, jails, and detention centers make great efforts to accommodate the religious practices of those in custody. Those great efforts, whatever else they include, must give Plaintiffs and other Muslim inmates food compatible with their religious practices. "Congress enacted RLUIPA … in order to provide very broad protection for religious liberty" to prisoners. *Holt v. Hobbs*, 135 S. Ct. 853, 859 (2015).

As the Ninth Circuit has made clear, all inmates—including the plaintiffs—"have the right to be provided with food sufficient to sustain them in good health that satisfies the dietary laws of their religion." *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987); *see also England v. Walsh*, 727 Fed. Appx 255, 256-7 (9th Cir. 2018) (unpublished opinion); *Porter v. Wegman*, 671 Fed. Appx. 442, 443 (9th Cir. 2016) (unpublished opinion); *Dickinson v. Arizona Dep't of Corr.*, 1999 U.S. App. LEXIS 16026 *3 (9th

PLAINTIFFS' MEMORANDUM ISO SUMMARY JUDGMENT

Cir. 1999) (unpublished opinion); *Logan v. Lewis*, 1998 U.S. App. LEXIS 3751 *3-4 (9th Cir. 1998) (unpublished opinion). Courts have "repeatedly held that forcing an inmate to choose between daily nutrition and religious practice is a substantial burden," particularly during Ramadan. *See, e.g., Thompson v. Holm*, 809 F.3d 376, 380 (7th Cir. 2016) (collecting cases and finding a substantial burden where prison denied inmate Ramadan meals for two days).

A substantial burden exists, then, whenever a facility either forces an inmate to choose between eating a diet that violates his faith and going without food at all for a period of time that inflicts on Plaintiffs an "adverse physical effect.." *Shakur v. Schriro*, 514 F.3d 878, 888-89 (9th Cir. 2008); *see also Vincent v. Stewart*, 757 Fed. Appx. 578, 580-81 (9th Cir. 2018) (unpublished opinion); *Rawlins v. Stewart*, 10 Fed. Appx. 446, 446 (9th Cir. 2001) (unpublished opinion).  With respect to this point of law, the Ninth Circuit is much like other circuit courts that have confronted similar issues. *See Love v. Reed*, 216 F.3d 682, 689-690 (8th Cir. 2000) (finding prison's failure to accommodate prisoner's religious diet a violation of RLUIPA and rejecting prison's suggestion that the prisoner could fast as an alternative to the prison's accommodation of the desired diet); *Nelson v. Miller*, 570 F.3d 868, 879 (7th Cir. 2009); *Hunafa v. Murphy*, 907 F.2d 46 (7th Cir. 1990).

Here, the undisputable facts show that the Department's Ramadan practices offered Plaintiffs food only when their faith did not allow them to eat.  It is a fact that the Department will, because it must, concede. All four plaintiffs urged Defendants to provide them with food after sunset so that they could break their daily, dawn-to-sunset fast and prepare for the next day's fast.  The Defendants knew because they were told repeatedly that plaintiffs could not and would not eat food from dawn to sunset.  For example, Naim Lao begged for food, explaining that he "was feeling dizzy" and that his "limbs were tingly."  Lao Dep., Ex. 9 at 4.  "Please feed me," he wrote in a grievance that was thoughtlessly rejected.  "[J]ust let me bring some food back to the cell and I will eat when my religion allows it." *Id.*  John James, who has Celiac disease, also pleaded his case to Defendants, explaining that eating gluten-laden meals caused him "extreme diarrhea, head aches, and body pains."  Ex. 10 at 13. From Mr. James' perspective, it seemed as if the facility, with deliberate intention, was "poisoning" him. *Id.*  And still, Defendants unthinking obedience to Department Ramadan practices prevented them from providing all fasting inmates with food at a time that they could make use of it.  Because

PLAINTIFFS' MEMORANDUM ISO SUMMARY JUDGMENT

1   Defendants would not provide food when Plaintiffs' religious beliefs permitted them to eat, and

2   altogether denied John James gluten-free food during Ramadan, Defendants have denied Muslim

3   inmates observing Ramadan food "that satisfies the dietary laws of their religion." *McElyea v. Babbitt*,

4   833 F.2d 196, 198 (9th Cir. 1987).  For RLUIPA, this burden is as substantial of a burden as there ever

5   was.

6       **D.    Because Depriving Muslim Inmates of Food Consistent with their Religious**

7           **Beliefs Substantially Burdens RLUIPA rights, Defendants Must Identify a**

8           **Compelling Interest—a Showing They Cannot Make**

9       A compelling interest does not exist just because a defendant labels its interest as compelling.

10  This Court must do more and ferret out exactly what interest is at stake.  And here, Defendants' interest

11  in denying food to Muslim inmates observing Ramadan's fast boils down to, at most, a marginal effort

12  to achieve a small, indeterminate amount of cost savings.

13      Defendants acknowledge that Ramadan meals are halal meals kept frozen that cost just $1.50

14  each.  Simpson 54:12-25 They acknowledge that it takes just a week—not six months—to order and

15  receive halal meals.  And the undisputed evidence indicates that Muslim inmates seeking to fast during

16  Ramadan can heat up their own frozen meals without creating any extra administrative burdens for

17  Defendants.  Nothing indicates how flimsy Defendants interest is here than the fact that, though

18  Defendants have been compelled to add Muslim inmates to the Ramadan list this year and last year,

19  they cannot any additional costs or problems with compliance.  Obenland Dep., Ex. 28, 43:17-46:16;

20  Stewart 30(b)(6) Dep., Ex. 21, 26:2-27:7.

21      These ethereal savings and conveniences, if they exist at all and are not just a pretext for

22  religious animosity, do not constitute compelling need. RLUIPA itself recognizes that it "may require

23  a government to incur expenses in its own operations to avoid imposing a substantial burden on

24  religious exercise." 42 U.S.C. § 2000cc-3(c). Thus, RLUIPA may override some fiscal policy decisions,

25  and, without more, a desire to curb costs is not a compelling interest that can justify a substantial

26  burden on the free exercise of religion. *See Burwell v. Hobby Lobby Stores, Inc.*, 134 S.Ct 2751, 2781 (2014)

27  (stating that RFRA and RLUIPA may require the government to expend additional funds to

28  accommodate citizens' religious beliefs).

PLAINTIFFS' MEMORANDUM ISO SUMMARY JUDGMENT

If cost containment were a compelling government interest in all circumstances, RLUIPA would be irreparably weakened. "To allow government conduct to survive strict scrutiny each time the government claims that accommodating an inmate's religion would impose some cost or inefficiency, would be to impermissibly weaken RLUIPA's effect." *Bilal v. Lehman*, 2006 U.S. Dist. LEXIS 93152 at *30 (W.D. Wash. Oct. 2, 2006) (*quoting Madison v. Riter*, 240 F. Supp. 2d 566, 578 n. 10 (W.D. Va. 2003)).

While some courts have held that limiting costs can be a compelling interest in certain circumstances, marginal cost savings is never a compelling interest. *See Luckette v. Lewis*, 883 F. Supp. 471, 480 (D. Ariz. 1995) (recognizing that limiting costs is a compelling interest, but holding that the additional expense of providing Kosher meals to inmates was not a compelling interest because it was "minimal"); *see also Agrawal v. Briley*, 2004 U.S. Dist. LEXIS 16997 *8 (N.D. Ill. 2004) ("It is undeniable that, in the abstract, safety, security, internal order and discipline, and the management and conservation of resources are 'compelling interests.' It does not follow, however, that anything that furthers one or more of these interests, however marginally, is equally 'compelling.' …. [T]he possibility that Plaintiff's preferred diet cost a small amount more per year could not be considered compelling.").

It is difficult to see how Defendants have established a compelling state interest not to incur costs associated with providing Ramadan meals to a few additional Muslim inmates who, according to their sincerely-held beliefs, have a religious obligation to fast during Ramadan. And other states are able to offer Ramadan meals that do not mimic the one at issue in this case. Alaska's Ramadan Policy, for example, provides hot meals totaling 2400-3000 calories a day with no hoops or signups required.[1] It is also why Plaintiff James has had no issue receiving Ramadan meals at all prior facilities.

In order for Defendants' administrative concerns to have an impact on this Court's analysis, the Department must still establish that avoiding additional administrative burden amounts to a compelling interest. *Bilal*, 2006 Dist. LEXIS 93152 at *34. In the 9th Circuit, when looking at whether budgetary and administrative concerns of the prison can justify a burden on free exercise, courts must look to whether there are reasonable alternatives to the current policy. The existence of alternatives is evidence that a prison policy is not reasonable and cannot be justified by reference to administrative

---

[1] http://www.correct.state.ak.us/pnp/pdf/805.03.pdf at 8.

concerns. *Ashelman v. Wawrzaszek*, 111 F.3d 674, 677 (9th Cir. 1997); *see also Ward v. Walsh*, 1 F.3d 873, 879 (9th Cir. 11993); *Turner v. Safley*, 482 U.S. 78, 90-91 (1987). That few other prisons appear to have the same issue that Defendants have is strong evidence that the administrative burdens here are imagined. And of course, many alternatives exist to minimalize any administrative burden.

Meanwhile, Defendants have not provided evidence to demonstrate that the burden on their efficiency is compelling other than conclusory statements. *F.T.C. v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) (such statements insufficient to avoid summary judgment).

Likewise, Defendants have not shown that the outright denial of Ramadan meals to a number of inmates is the least restrictive means of achieving that goal. "The least-restrictive-means standard is exceptionally demanding." *Holt v. Hobbs*, 135 S.Ct. 853, 864 (2015). It "requires the government to show that it lacks other means of achieving its desired goal without imposing a substantial burden." *Id.* "If a less restrictive means is available for the Government to achieve its goals, the Government must use it." *Id.*

The same alternatives that show a lack of compelling interest also show the lack of least restrictive means. The Department cannot meet its burden to prove least restrictive means unless it demonstrates that "it has actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice. *Warsoldier*, 418 F.3d at 999. In *Holt*, 135 S.Ct. at 866, the Supreme Court, finding that a policy violated RLUIPA, stated, "when so many prisons offer an accommodation, a prison must, at a minimum, offer persuasive reasons why it believes it must take a different course, and the Department has failed to make that showing here." *See also Warsoldier*, 418 F.3d at 1000 ("[W]e have found comparisons between institutions analytically useful when considering whether the government is employing the least restrictive means.") The Department of Corrections offers no explanation why these prison systems are able to meet their interests without infringing on their inmates' right to freely exercise their religious beliefs.

**E.      Even the Court Identifies a Compelling Interest, Defendants Unthinking Obedience to their Past Ramadan Practices Shows that Less Restrictive Means were Available to Them**

With extra food on hand every day of Ramadan, and more just a phone call and a few days

1   away if needed, depriving Plaintiffs of food at a time they could eat was not the least restrictive means

2   of pursuing the Department's interest however Defendants characterize it. "The least-restrictive-means

3   standard is exceptionally demanding." *Holt v. Hobbs*, 135 S.Ct. 853, 864 (2015). It "requires the

4   government to show that it lacks other means of achieving its desired goal without imposing a

5   substantial burden." *Id.* "If a less restrictive means is available for the Government to achieve its goals,

6   the Government must use it." *Id.*

7         The same alternatives that show a lack of compelling interest also show the lack of least

8   restrictive means. The Department cannot meet its burden to prove least restrictive means unless it

9   demonstrates that "it has actually considered and rejected the efficacy of less restrictive measures

10  before adopting the challenged practice. *Warsoldier*, 418 F.3d at 999. In *Holt*, 135 S.Ct. at 866, the

11  Supreme Court, finding that a policy violated RLUIPA, stated, "when so many prisons offer an

12  accommodation, a prison must, at a minimum, offer persuasive reasons why it believes it must take a

13  different course, and the Department has failed to make that showing here." *See also Warsoldier*, 418

14  F.3d at 1000 ("[W]e have found comparisons between institutions analytically useful when considering

15  whether the government is employing the least restrictive means.") The Department offers no

16  explanation why these prison systems are able to meet their interests without infringing on their

17  inmates' right to freely exercise their religious beliefs.

18  **II.    Defendants' Policies Starve Fasting Muslim Inmates in Violation of the Eight**

19  **Amendment**

20        The same policies that require Muslims such as Plaintiffs to either starve or abandon their

21  religious beliefs also violate the Eighth Amendment.

22        The United States Supreme Court has held that "'the unnecessary and wanton infliction of pain

23  ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Hudson v.*

24  *McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312 (1986)). "What is necessary to

25  show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the

26  claim at issue." *Id.* The inquiry is "contextual and responsive to 'contemporary standards of decency.'"

27  *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). *See also, Estelle,* supra, 429 U.S., at 102 (proscribing

28  torture and barbarous punishment was "the primary concern of the drafters" of the Eighth

Amendment); *Wilkerson v. Utah*, 99 U.S. 130, 136 (1879) ("[I]t is safe to affirm that punishments of torture ... and all others in the same line of unnecessary cruelty, are forbidden by [the Eighth Amendment]").  When the cumulative impact of the conditions of incarceration threatens the physical, mental, and emotional health and well-being of the inmates and/or creates a probability of recidivism and future incarceration, the court must conclude that the conditions violate the Constitution." *Rhodes v. Chapman*, 452 U.S. 337, 364 (1981).

Under the Eighth Amendment, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996); *Hoptowit v. Ray*, 682 F.2d 1237, 1246 (9th Cir. 1982). "While prison food need not be 'tasty or aesthetically pleasing,' it must be 'adequate to maintain health." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996), quoting *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993).

An Eighth Amendment violation will be found when (1) the alleged deprivation must be objectively sufficiently serious, and (2) the prison official acted with deliberate indifference to inmate's serious needs.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Rhodes v. Chapman*, 452 U.S. 337 (1981). Those violations that deny basic necessities are sufficiently grave to form the basis for an Eighth Amendment claim.  *Wilson v. Seiter*, 501 U.S. 294 (1991). Deliberate indifference is found when the government is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and, as a result, draws such an inference. *Id.* at 837. But even a prison official who was unaware of the risk of substantial risk of harm violates the Eighth Amendment if the risk was obvious so that a reasonable person should have inferred a substantial risk of serious harm.  *Id.*

The deliberate indifference of Defendants is pronounced.  All four plaintiffs put in writing repeatedly that they were going without food.  Mohamed Mohamed explained his predicament: "I can't go to the regular mainline because I can't bring the food back and…I can't eat after sundown."  Ex. 7. Demario Roberts stated in plain English to Defendants that he "was not getting fed through DOC." Ex. 8.  Defendants knew that Plaintiffs were not getting food between sunset and dawn, the only time during which they could eat as Muslims observing Ramadan's fast.  Indeed, rather than provide Plaintiffs with food, a guard noticing Naim Lao's ragged appearance threatened to force feed him if he

1    continues to fast in accordance with his faith.  Lao Dep., Ex. 9 at 4.

2           Depriving adequate nutrition and caloric intake to inmates constitutes an actionable Eighth

3    Amendment violation. The Eighth Amendment imposes a duty on officials to provide "humane

4    conditions of confinement," including ensuring, among other things, that prisoners receive adequate

5    clothing, food and medical care. *Johnson*, 217 F.3d at 731 (quoting *Farmer v. Brennan*, 511 U.S. at 832).

6    A deprivation that denies prisoners the "minimal civilized measure of life's necessities" can form the

7    basis of an Eight Amendment Claim. *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); *see also*

8    *Keenan*, 83 F.3d at 1089. Further, "the more basic the need, the shorter the time it can be withheld."

9    *Hoptowit*, 682 F.2d at 1259; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1314, *as amended*, 75 F.3d 448

10   (9th Cir. 1995).

11          That requires providing [food]…Other courts have also held that inadequate food is actionable

12   under the Eighth Amendment. *See, e.g., Cunningham v. Jones*, 567 F.2d 653, 656 (6th Cir. 1977); *Berry v.*

13   *Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002) ("A

14   substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim

15   under the Eighth Amendment."); *Landman v. Royster*, 333 F. Supp. 621 (E.D. Va. 1971).

16   **III.    Defendants Violate the Equal Protection Clause and Free Exercise Clause**

17          Defendants violate the Equal Protection Clause if Plaintiffs can show a difference in treatment

18   between Muslims and other protected groups, unless the difference "is reasonably related to legitimate

19   penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see Shakur v. Schriro*, 514 F.3d 878, 891

20   (9th Cir. 2008).  Under the four part *Turner* test, reasonableness looks to (1) the logicalness of the

21   connection between the regulation and the goal, (2) the alternate means of exercising the right in

22   question that currently exist, (3) the impact of accommodation on others, and (4) the absence of ready

23   alternatives. *Turner*, 482 U.S. at 89-91.

24          Here, Ramadan and Passover are treated differently.  The evidence shows that Plaintiffs and

25   other Muslims were scrutinized heavily before being permitted to obtain Ramadan meals.  But for

26   Passover, a different story emerges.  "A few years ago, the Department experienced 1,800 individuals

27   who signed up for Passover."  Simpson Dep., Ex. 29, 59:14-15. But instead of scrutinizing and rejecting

28   those individuals because they did not sign up ahead of time or pass any religious tests, the Department

- 18 -

1  of Corrections simply provided the 1,800 all-of-a-sudden Jewish inmates Passover meals.  Simpson

2  Dep., Ex. 29, 59:14-15; 60:13-62:14.  This created "a third of a million dollars divot" into the

3  Department of Corrections' budget.  Simpson Dep., Ex. 29, 59:15-16. And yet, despite that, the meals

4  were provided, no questions asked.  Simpson Dep., Ex. 29, 59:15-16; 60:13-62:14.

5         This unequal treatment violates the Equal Protection Clause.  Discrimination and differential

6  treatment on the basis of religion also violates the Free Exercise Clause.  *See, e.g., Bd. of Educ. of Kiryas*

7  *Joel Vill. Sch. Dist. v. Grumet*, 512 U.S. 687, 715 (1994) (O'Connor, J., concurring); *see also Awad v. Ziriax*,

8  670 F.3d 1111, 1128 (10th Cir. 2012).  Such discrimination cannot be justified under any of the *Turner*

9  factors.  In fact, the Department's Passover meals are more expensive than the Halal meals.  Simpson

10 Dep., Ex. 42:25-43:20; *see also Bilal*, 2006 WL 3626808, at *7.

11 **IV.      Defendants Are Not Entitled to Qualified Immunity**

12        Plaintiffs seek damages against individual-capacity Defendants for violations of Plaintiffs

13 constitutional rights. 42 U.S.C. § 1983 provides a cause of action against persons acting under the color

14 of state law who have violated rights guaranteed by the Constitution. *Buckley v. City of Redding*, 66 F.3d

15 188, 190 (9th Cir. 1995). Here, though the Defendants are likely to assert qualified immunity as a

16 defense against these damages claims, the clarity of the constitutional violation precludes its application

17 to this case.

18        There can be no qualified immunity when a constitutional right at issue was "clearly

19 established" at the time of the alleged violation. *Dela Cruz v. Kauai County*, 279 F.3d 1064, 1069 (9th

20 Cir. 2002).  And there are few rights more clearly established than the right of an inmate to adequate

21 nutrition.  "There is no question that an inmate's Eighth Amendment right to adequate food is clearly

22 established." *Foster v. Runnels*, 554 F.3d 807, 815 (9th Cir. 2009).  Defendants have always known that,

23 as the government officials who exercise control over Plaintiffs during their incarceration, it is their

24 constitutional obligation to provide them "with food sufficient to sustain them in good health that

25 satisfies the dietary laws of their religion."  *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987).

26 Defendant Stewart, an architect of the Department's Ramadan practices, acknowledged as much when

27 she conceded in deposition that, of course, "it would be not right to not provide people food to be

28 able to sustain themselves."  Stewart Dep, 153:11-12.  Though the Supreme Court does "not require a

- 19 -

1  case directly on point" to satisfy the "clearly established" threshold that must be met to defeat qualified

2  immunity, the Ninth Circuit in *McElyea* and other cases has spoken plainly on the nonnegotiable

3  requirement that inmates be fed and otherwise not coerced into abandoning their religious

4  beliefs.  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083, 563 U.S. 731, 179 L. Ed. 2d 1149 (2011)

5    More than twenty years ago, the Ninth Circuit directed a prison to provide a kosher[2] diet to a

6  Jewish inmate "sufficient to sustain [him] in good health without violating the laws of kashruthf."

7  *Ashelman v. Wawrzaszek*, 111 F.3d 674, 677 (9th Cir. 1997).  The case embraced *McElyea's* holding

8  explicitly, emphasizing that providing food in accordance with the "dietary laws of their religion" is

9  what the Ninth Circuit requires.  *Id*.  Indeed, in *Ashelman,* the Ninth Circuit approvingly noted that the

10  Arizona prison at the center of the dispute already "accommodates the dietary requirements of other

11  religious groups, including Muslims, Sikhs, and Seventh-Day Adventists."  *Id*, at 678.  Simply put,

12  Defendants have had decades of notice from the Ninth Circuit that the Constitution requires that they

13  must accommodate the religious dietary needs of their inmates.

14    The Ninth Circuit has also looked to other circuit courts to support its holding that a prisoner's

15  right to a religious diet is clearly established law. *See Navajo Nation v. United States Forest Serv.*, 535 F.3d

16  1058, 1091 (9th Cir. 2008), citing *Lovelace v. Lee*, 472 F.3d 174, 198-99 (4th Cir. 2006) ("Under both

17  the Free Exercise Clause and RLUIPA in its most elemental form, a prisoner has a 'clearly established

18  … right to a diet consistent with his … religious scruples,' including proper food during Ramadan.")

19  (quoting *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003)).

20    Department prison authorities are familiar with Islam and have provided Ramadan meal

21  services for a number of years. Moreover, the presence of Muslim inmates is sufficient to alert the

22  authorities to their constitutional and statutory duty to accommodate the religious exercise of those

23  inmates. The law is clearly established that unthinkingly depriving inmates of food consistent with their

24  religious beliefs is illegal.  A reasonable official would realize that the actions taken by Defendants'—

25

26

27    [2] While a kosher diet implicates *what* food is served, an Islamic diet also regards *when* food is
served.  During Ramadan, for example, an Islamic diet would provide Muslim inmates with food
28  between sunset and dawn so that they can eat and observe their daily daytime fast.

PLAINTIFFS' MEMORANDUM ISO SUMMARY JUDGMENT

forcing Plaintiffs to choose between their sincerely-held religious beliefs and food—would thus violate clearly established law.

Moreover, the law is clearly established that withholding food from inmates is a violation of the Plaintiffs' rights under the Eighth Amendment. "There is no question that an inmate's Eighth Amendment right to adequate food is clearly established." *Foster v. Runnels*, 554 F.3d 807, 815 (9th Cir. 2009); *see also supra* Part II. It is also not a defense that the Ramadan policy is a written regulation. Defendants cannot "seek shelter in the reasonableness of [their] actions on the basis of [a memo or regulation]." *Id.* at 816; *see Cooper v. Sheriff*, 929 F.2d 1078, 1083 (5th Cir. 1991).

## CONCLUSION

Plaintiffs' motion for summary judgment as to liability and a permanent injunction should be granted.

Respectfully submitted,

Dated:  July 10, 2019                    **CAIR LEGAL DEFENSE FUND**

By /s/ Lena F. Masri
Lena F. Masri (DC Bar # 1000019)
   (*pro hac vice*)
Gadeir I. Abbas (VA Bar # 81161)*
   (*pro hac vice*)
Carolyn M. Homer (DC Bar # 1049145)
   (*pro hac vice*)
453 New Jersey Ave., SE
Washington, DC 20003
 Phone: (202) 742-6420

*Licensed in Virginia, not D.C.*
*Practice limited to federal matters.*

**GAIRSON LAW, LLC**

Jay Gairson (Washington Bar # 43365)
4606 Martin Luther King Jr Way S
Seattle, WA 98108
Phone (206) 357-4218

*Attorneys for Plaintiffs*

PLAINTIFFS' MEMORANDUM ISO SUMMARY JUDGMENT