UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEMARIO ROBERTS, et al.,

Plaintiffs,

v.

STEPHEN SINCLAIR, et. al.,

Defendants.

Case No. C18-837 RSM

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

## I.      INTRODUCTION

This matter comes before the Court on Motions for Summary Judgment filed by the parties.  Dkts. #73 and #79.  The Court has determined it can rule on these Motions without oral argument.[1]   For the reasons stated below, Defendants' Motion is GRANTED and Plaintiffs' Motion is DENIED.

## II.      BACKGROUND

Plaintiffs Demario Roberts, Mohamed Mohamed, Jeremy Livingston, Naim Lao, and John James are inmates at the Monroe Correctional Complex ("MCC" or "Monroe"), part of

---

[1] Oral argument has been requested by Plaintiff. However, "[w]hen a party has [had] an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in a refusal to grant oral argument]." *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991)). "In other words, a district court can decide the issue without oral argument if the parties can submit their papers to the court." *Id*.  Here, the issues have been thoroughly briefed by the parties and oral argument would not be of assistance to the Court.  *See also* LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided by the court without oral argument.").

the Washington State Department of Corrections ("DOC"). The Defendants are individuals associated with that facility: Stephen Sinclair, the Secretary of the DOC, Belinda Stewart, DOC Corrections Program Administrator, Jamie Dolan, DOC Food Services Administrator, Mike Obeland, Superintendent of MCC, Jeff Uttecht, Superintendent of Coyote Ridge Corrections Center, David Sherman, Chaplain at MCC, Mr. Fischer, another chaplain at MCC, Pete Maxson, Grievance Coordinator at MCC, Sergeant Parks at the MCC, Sergeant Rose at the MCC, and an unidentified chaplain at MCC. *See* Dkt. #59. Some Defendants are sued in their official capacity, some in their individual capacity, and some in both capacities. *Id.* Plaintiffs allege that Defendants violated their rights by denying them access to special meals during the month of Ramadan in the Islamic Calendar. *See id.* The Amended Complaint lists the following causes of action: violation of the Eighth (and Fourteenth) Amendment's right to be free from cruel and unusual punishment, violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), violations of the First (and Fourteenth) Amendment's free exercise of religion and equal protection clauses, and a civil rights claim under § 1983. *Id.*

### A. DOC's Ramadan Meal Policy in 2018

Plaintiffs are practicing Muslims who sincerely believe observing Ramadan is required by their religious faith. *See* Dkt. #80-1 ("Livingston Dep."), 27:24-30-25; Dkt. #80-3 ("Mohamed Dep."), 21:20-22:25; Dkt. #80-2 ("James Dep."), 8:8-8:13, 20:3-20:11; Dkt. #80-9 ("Lao Dep."), 24:20-26:5; Dkt. #80-10 ("Roberts Dep."), 12:18-13:7, 23:5-23:7. In accordance with their Islamic faith, Muslims worldwide observe Ramadan as a month of fasting. *See* Dkt. #79-3 ("2018 Ramadan Memo") at 5. During Ramadan, participating Muslims refrain from eating and drinking from dawn until sunset. Participating Muslims are permitted to consume

food and liquids during the remaining hours (sunset until dawn). *See id.*; *see also* Dkt. #80-4 ("Obenland Dep."), 22:5-23:13.

Each year, the Washington DOC issues a Memorandum from the Corrections Program Administrator and the Food Services Administrator addressed to "All Incarcerated Individuals." *See* Dkt. #79-3; Dkt. #79-21 ("Stewart Dep."), 63:20-25, 64:1-2. The 2018 Ramadan Memo explains the sign-up process that inmates were required to follow to be added to the Ramadan Meal Program. The memo sets a sign-up deadline two weeks after the memo is issued. Stewart Dep. at 32:12-24, 52:19-54:18. Attached is a Ramadan Meal Request Form the inmates are required to fill out as part of the sign-up process. Stewart Dep. at 34:17-37:9; Dkt. #79-2 at 1-3.

Inmates are eligible to participate in the Ramadan Meal Program if they satisfy one of two criteria: "Ramadan participant approval will be based on participation in Islamic/Muslim religious programming over the past six (6) months or those currently on a halal meal." Dkt. #79-3 at 2. Defendant Stewart states that he added these criteria because he thought it would "be as inclusive as possible" while also trying "to weed out individuals who are in the system who have no religious affiliation to Ramadan of any kind and… sign up just because they think it's something different to eat," and to ensure that participants "have some sort of sincerity toward the faith." Stewart Dep. at 43:1-21, 50:17-51:17.

In 2018, Ramadan began on May 16. The Ramadan Memo was issued on January 16, 2018, and inmates had until 5 pm on January 30, 2018, to sign-up for Ramadan meals. Dkt. #79-2. Facility chaplains had a separate deadline of February 15, 2018, to submit a request for an exception to Defendant Stewart's office for consideration. Stewart Dep. at 69:12-25 to 70:1-

16. Inmates were not notified of the deadline set for chaplains to submit requests for exceptions. Stewart Dep. at 69:12-25 to 70:1-16.

An inmate who failed to jump through the above procedural hoops would not receive a meal after sunset. Stewart Dep. at 69:2-7. Such an inmate was still eligible to receive normal meals during the day and may have had access to snacks and other such food they purchased for themselves from the commissary. *See* Dkt. #79-22 at 9.

The Ramadan Memo indicates that "Ramadan participants will not be provided any other alternative meals during this time." Dkt. #79-3 at 2. "Alternative" in this context refers to special dietary meals. *See* Stewart Dep. at 63:3-12.

**B. Facts Specific to these Plaintiffs**

All five Plaintiffs were inmates in DOC's custody during Ramadan 2018.

**1. Demario Roberts**

Plaintiff Roberts has been in DOC custody since May 2017 and was housed at MCC from June 2017 until May 2019. Dkt. #75-1 at 15–16 and 32. He has not requested a religious diet during his incarceration. Roberts indicated in deposition that he has not requested halal meals because he does not like DOC food and "I just don't eat here." Roberts Dep. at 20:23-21:5. DOC did not receive a Ramadan meal request form from Roberts in 2018. Dkt. #16, ("Stewart Dec."), ¶ 12; Dkt. #77 ("Sherman Dec."), ¶ 6. Because DOC did not receive a form, Roberts was not on the list of approved inmates when Ramadan 2018 began.

On May 21, 2018, DOC received a grievance from Roberts that he was not receiving Ramadan meals. Dkt. #17, ("Maxson Dec."), at ¶ 7 & Dkt #17-1 at 38. Grievance Coordinator Peter Maxson interviewed Roberts that day and asked Roberts whether he signed up for the Ramadan meal program. Dkt #17 at ¶ 7. Roberts responded he had not. Maxson also asked

Roberts whether he had seen the sign-up information posted in January. Roberts said he had, but that he did not submit the required form. *Id*. Maxson asked Roberts if he agreed to informally resolve the grievance on that basis, and the grievance was marked informally resolved at Level 0. Roberts did not appeal or pursue the grievance further. *Id*.

### 2. Mohamed Mohamed

Plaintiff Mohamed entered DOC custody in 2015. Mohamed Dep. at 9:13-14. He was housed at the Coyote Ridge Corrections Center in 2016 and 2017, where he signed up for and participated in the Ramadan meal program. Stewart Dec., at ¶ 13; Mohamed Dep. at 22:19-25. Mohamed transferred to MCC in December 2017 and had an anticipated earned early release date in May. Stewart Dec. at ¶ 13; Mohamed Dep. at 16:16-18. However, in April 2018, while housed in the minimum security unit, Mohamed received an infraction for violating WAC 137-25-030(603), introducing or transferring any unauthorized drug or drug paraphernalia, based on evidence that Mohamed had conspired to introduce marijuana and spice into the prison. Stewart Dec. at ¶ 13. A hearings officer found Mohamed guilty of the infraction and sanctioned him to a loss of 30 days of good conduct time. *Id.* This extended his early release date past Ramadan, to June 20, 2018, and he was demoted to the medium custody unit at MCC. *Id.*

On May 2, 2018, after Mohamed's release date was extended, he sent an electronic kiosk message to the Chaplain and asked "Can I get put on Ramadan List? I missed the deadline..." Dkt. #20-1 at 16. The Chaplain responded that it was too late to sign up. *Id.* at 17. Mohamed responded by saying "I didnt (sic) have a choice because I lost good time, 30 days. I have to get on that list. Religious purposes cause I will not go too mainline. Thank you." *Id.* at 18. For whatever reason, the Chaplain did not pursue the matter further.

Mohamed filed a grievance on May 16, 2018. Dkt. #17-1 at 41. Grievance Coordinator Maxson investigated, determined DOC had no record of Mohamed submitting the Ramadan form, and concluded that Mohamed could not be given the requested relief as a result. *Id.* at 43. Whether that decision was reasonable or not, Mohamed did not appeal the grievance response. Defendants note that Mohamed purchased on that same day a significant amount of food from the commissary, including ten packages of white rice, ten packages of cheesy rice and beans, cheese, summer sausages, cookies, Doritos, potato chips, a hot pickle, and swiss rolls. Dkt. #21-1 at 16.

### 3. Jeremy Livingston

Livingston reentered DOC custody at the Washington Corrections Center (WCC) on January 18, 2018. Livingston Dep. at 11:11-13; Stewart Dec. at ¶ 14. He requested a halal diet in February 2018, after the Ramadan sign up deadline. Stewart Dec. at ¶ 14. Livingston had previously been incarcerated with DOC from October 2015 to June 2017 and was familiar with the Ramadan sign-up process through this prior incarceration. Livingston Dep. at at 11:17-12:15, 51:16-18. Livingston did not sign up for Ramadan during the Ramadan sign-up period. *Id.* at 51:19-52:20.

On May 15, 2018, Livingston sent a kiosk message to the Chaplain asking to be placed on call out for Ramadan night studies and stating he had not been placed on the Ramadan List. Dkt. #20-1, at 6. Livingston sent another message on May 17, 2018, asking to be put on the Ramadan List. *Id.* The Chaplain responded and indicated he had no record of Livingston signing up for Ramadan and that he (the Chaplain) had emailed the WCC Chaplain to see if there was a record of Livingston signing up while at WCC. *Id.* The Chaplain asked if Livingston had a record showing he had signed up, and Livingston responded "I left WCC

before I could sign up plus it was too far before Ramadan even started. Is there any way you can accomodadate (sic) me for Ramadan?" *Id*. In follow up, the Chaplain confirmed that notice of the Ramadan sign-up process was posted in all living units at WCC, and that there was no record of correspondence from Livingston to the WCC Chaplain requesting participation in the Ramadan meal program. *Id*. at 8; Sherman Dec. at ¶ 6.

On May 16, 2018, Livingston submitted an emergency grievance stating he requested a Ramadan meal in a kiosk message and had not received the meal. In the grievance, Livingston stated he was on a halal diet and that he "had received it but not my meal for when I break my fast after sundown." Maxson Dec. at ¶ 9. Maxson interviewed Livingston about his grievance on May 22, 2018, asking why he did not sign up at WCC. *Id*. Livingston said he was in segregation and never saw a posting. *Id*. Upon further questioning, Livingston indicated he knew about the sign up process from being in prison before. *Id*. Maxson explained there was no record of Livingston signing up for Ramadan as was required and asked Livingston whether he agreed his grievance was resolved on this basis. *Id*. Livingston stated that he "guessed that it was resolved" but believed DOC still had to feed him. *Id*. The grievance was marked informally resolved. Whether this resolution to the grievance was reasonable or not, Livingston did not appeal the decision. *Id.*; Livingston Dep. at 77:22-23. Defendants note that he purchased and received numerous food items from the inmate store in May and early June, including summer sausage, corn tortillas, and over a case of ramen noodles. Dkt. #21-1 at 10 and 19.

### 4. Naim Lao

Plaintiff Lao entered DOC custody in June 2017 and arrived at MCC in September 2017. Stewart Dec. at ¶ 15; Lao Dep. at 13:14-24. Chaplain Sherman states he sent Lao a copy

of a Ramadan sign-up form in January 2018 as a member of a list of inmates participating in Islamic programs. Sherman Dec. at ¶ 4; Dkt #77-1 at 2. Plaintiff contests this assertion but offers no evidence to create a genuine dispute. Lao did not sign up for the Ramadan meal program before the deadline. On May 17, 2018, Lao sent a kiosk message to the Chaplain to ask to get on the Ramadan List to receive meals. Dkt. #20-1 at 14. The Chaplain responded that he could add Lao to the daily prayer but not the Ramadan list because Lao needed to sign up by January 30, 2018. *Id*. Lao sent a kiosk message to the Chaplain a few days later complaining he was not on the daily prayer list and the chaplain responded that Lao had been placed on the callout list for prayer. *Id*. On May 23, 2018, Lao received an exception and was added to the Ramadan Meal List and began receiving meals. Stewart Dec. at ¶ 15; Lao Dep. at 57:1-4.

### 5. John James

Plaintiff James has been incarcerated since the early 1990s. James Dep. at 38:24-25. James transferred to MCC on January 2, 2018. *Id*. at 8:4-18. Shortly thereafter, James became one of the inmate leaders for Jummah. Counsel Dec., *Id*. at 26:18-22. James has been on a gluten free diet to treat a medical condition. *Id*. at 81:16-20, 84:7-9. James submitted a Ramadan meal request form and was added to the Ramadan meal program in January 2018. *Id*. at 8:22-24. James was on the Ramadan list and received Ramadan meals. *Id*. at 89:24-90:1. Some of the Ramadan meals contain gluten. *Id*. at 55:17-56:25. James traded the items in the Ramadan meals to other inmates in exchange for items that he could eat. *Id*. at 56:23-57:6. James also supplemented his Ramadan meals with food from the commissary and the quarterly package program. *Id*. at 76:25-80:17. On the first day of Ramadan, James spoke to an unidentified cook about getting a different meal, and this cook told him that the Ramadan meal

was all that he or she had for James. *Id.* at 55:17-56:7. The cook was the only DOC staff person to whom James clearly recalled speaking during Ramadan 2018. *Id.* at 57:18-58:19. On June 12, 2018, a couple days after this action was filed, DOC received a grievance from James regarding this issue. Dkt. #78 ("Second Maxson Dec."), ¶ 7. James finished exhausting his administrative remedies after the Amended Complaint in this case was filed. *Id.*

## C. Events after Ramadan 2018

Since Ramadan 2018, three of the Plaintiffs have been released from custody— Mohamed, Lao, and Livingston. *See* Dkt. #73 at 11. Plaintiff Roberts is still incarcerated and successfully signed up and participated in Ramadan 2019. Dkt. #75-1 at 31. Plaintiff James was given a special accommodation of gluten free meals during Ramadan 2019. Dkt. #76 ("Heise Dec."), ¶ 10; Dkt. #74 ("King Dec."), ¶ 12.

## III.    DISCUSSION

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S.*

*Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Disputes of Material Fact**

In their Response to Defendants' Motion for Summary Judgment, Plaintiffs point to the following disputes of material facts. *See* Dkt. #85 at 5–11.

**1. Visibility and Awareness of the Ramadan Memo**

Plaintiffs contend they were not aware of the Ramadan Memo or sign-up deadline. David Sherman, chaplain at MCC, states via declaration that he took multiple steps to attempt to ensure that inmates had notice of the sign up process, including: 1) ensuring "the memo is posted in the living units at WSR where other information of interest to the incarcerated population is posted;" 2) ensuring the memo "is posted in the space where inmates have Jummah prayer on Fridays;" 3) sending "paper copies of the Ramadan memo and a Ramadan meal request form to every inmate at WSR, the SOU, and the IMU who had participated in Islamic programming over the six months prior to January 2018." Sherman Dec. at ¶4.

Plaintiffs counter "[i]n his deposition, Sherman offered different testimony, confirming that 'he never verified whether the Ramadan Memo was ever posted at any of MCC's units.'" Dkt. #85 at 5. Plaintiffs cite to Sherman's deposition at page 56 lines 4 through 22 with the above quote in quotation marks. *Id.*

The Court has two issues with Plaintiffs' briefing on this subject. First, those exact words are not on the page. The Court believes it most likely that the quotation marks from

Plaintiffs' counsel were added by mistake, and that Plaintiffs intended to paraphrase what the deponent said. The second issue is that this is a mischaracterization. The deponent stated in full:

> And just because I sent something to somebody and asked them to post it doesn't mean it happens. That's where we come in and we verify that they've actually followed through with all we've done, because people get lots of memos, lots of things. This has the chaplain's request coming through. It's not like the superintendent's name coming through.
>
> Q. Did you do that, did you verify to make sure that the forms were posted on all of these units?
>
> A. I could tell by the response. I mean, I'd walk through on those units. I could also tell by the response that the people got it, both from the offenders that were attended the Jumah, because if it wasn't, everybody would be on my case and let me know. I can't tell you that I physically walked into that dayroom to see if it was there. But I can tell you by the response of people all through the whole facility, yeah, the message is out, they have this information.

Dkt. #79-24 at 56:4-22. Mr. Sherman's testimony does not *confirm* that he never verified whether the Ramadan Memo was posted. It does not contradict his declaration testimony. It does not in itself create a question of fact as to whether or not the Ramadan Memo was posted where Plaintiffs could see it in 2018. The Court concludes Plaintiffs have failed to point to evidence indicating a genuine dispute as to whether the Ramadan Memo was clearly posted.[2]

## 2. Whether Roberts and Mohamed Submitted their Ramadan Forms

These two Plaintiffs will apparently testify that they filled out their Ramadan sign-up forms, but Defendants lost them. Dkt. #85 at 6–7. However, the record shows that Plaintiff Mohamed provided the form to a "volunteer Imam" (which Defendants clarify in their Reply brief is another inmate) and not directly to the MCC chaplain. Dkt. #79-8 at 2. The record

---

[2] The Court notes that Plaintiffs make several tangential arguments about Defendants failing to post the memo in 2019, not providing notice of Ramadan practices for inmates in segregation, or in other facilities. Dkt. #85 at 5–6. These do not create a genuine dispute as to notice of the 2018 Ramadan Memo at the MCC.

shows that Plaintiff Roberts gave his form to Plaintiff Mohamed to submit. Dkt. #80-10 at 28–29. Plaintiffs point to no evidence that tends to show that Defendants lost these forms. Defendants argue that Plaintiffs did not follow the proper procedure by actually delivering their sign-up forms to the chaplain.

Whether or not it is reasonable for the policy to require inmates to sign up for Ramadan in this way, Plaintiffs have failed to demonstrate a genuine dispute as to a material fact here.

### 3. Whether Plaintiffs Exhausted Administrative Remedies

Defendants argue that Plaintiffs have failed to exhaust their administrative remedies. Plaintiffs contend that they exhausted all available administrative remedies by either exhausting the DOC's emergency complaint process, filing grievances in years prior to 2018, or by arguing that such grievances would be futile. *See* Dkt. #85 at 6–11.

On Reply, Defendants point out that Plaintiffs Mohamed and Roberts "did not submit the grievances as emergency grievances because they failed to follow the process for submitting emergency grievances and instead put their grievances in the grievance box." Dkt. #89 at 5 (citing Dkt. #17, at 3–4). This is not disputed. Plaintiffs instead appear to argue that Defendants should have treated these grievances as emergency grievances regardless of how they were submitted. Defendants contend that Mohamed did not appeal the Level I grievance response, and Roberts failed to appeal the Level 0 response. Dkt. #73 at 13 (citing Dkt. #17 at ¶ 10; Second Maxson Dec., at ¶¶ 3-6).

As to Plaintiffs Mohamed and Roberts, the record is clear that they submitted grievances through the standard process yet failed to appeal those grievances, resulting in a failure to exhaust administrative remedies. Plaintiffs do not offer a valid basis to set this requirement aside. Plaintiffs fail to point to sufficient evidence that could lead a fact-finder to

conclude that these Plaintiffs were blocked from proceeding with the grievance appeal process or intimidated by Defendants.

Plaintiff Livingston also failed to properly appeal his emergency grievance.  However, Plaintiffs argue that:

> …Lt. Asin deemed the complaint nonemergent and sent the grievance to Maxson for processing as a non-emergent grievance. Instead of addressing the issue of not receiving Ramadan meals, Maxson responded by checking a box on the form that says, "Additional information and/or rewriting needed… Return within 5 working days or by 5-24-18." Livingston provided a two-page written explanation with the requested additional information. When Maxson discussed the grievance with Livingston, Maxson did not correct Livingston's understanding that he no longer needed to rewrite the complaint after he provided the additional information Maxson requested. Nonetheless, Maxson still refused to process the complaint further because "[t]here was still a requirement for him to rewrite the complaint for it to be processed."

Dkt. #85 at 8.  Likewise, Plaintiff Lao eventually properly submitted an emergency grievance, which was also determined by Defendants to be non-emergent.  Dkt. #17 at 5.  This grievance stated, in part:

> I have filed 3 emergency grievances… I went to go talk to the grievance coordinator yesterday who was holding my grievances asked what is going on and he sides with Chaplain Sherman on his decision of no feeding me. When asking him what to do moving forward, he states to go to mainline and eat your food. Even though I repeated to him that I am fasting and they will not let me bring back and food he sternly said, "EAT IT THERE."  Yesterday I was feeling dizzy and my limbs were tingly and approached Sargent [sic] Parks stating that there is something clearly wrong with me and that I am about to pass out and explain to him what was going on and he said that if I don't start eating then sooner or later they are going to have to force feed me….

Dkt. #17-1 at 53.  Converting an emergency grievance into a non-emergent grievance required a judgment call from Defendants as to whether or not these Plaintiffs raised a potentially

serious health issue or severe pain.  Given the circumstances of this case, the Court finds that these judgment calls, as well as the communications from Defendants to Plaintiffs above, raise questions of material fact as to whether administrative remedies were available to these two Plaintiffs, and whether Defendants intimidated Plaintiffs or misrepresented what was needed to advance their grievance.  Defendants argue that once these emergency grievances were converted to ordinary grievances, Plaintiffs knew or should have known that they could simply appeal the grievances to the next level.  The Court is not convinced by this record that such was made sufficiently clear to Plaintiffs.  The Court finds it cannot rule as a matter of law that these two Plaintiffs exhausted their administrative remedies.

The parties agree that Plaintiff James did not exhaust his administrative remedies until after the Amended Complaint was filed.

### C. Defendant's Motion for Summary Judgment

#### 1. Failure to Exhaust Administrative Remedies

Defendants first argue that Plaintiffs failed to exhaust their administrative remedies.

Exhaustion is a prerequisite for Plaintiffs' claims under the Prison Litigation Reform Act. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 83 (2006).[3]  To effectively exhaust administrative remedies, an inmate must use all the formal steps of the prison grievance process. *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009).  Exhaustion must be accomplished prior to the filing of the lawsuit.  *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (requiring dismissal when exhaustion was ongoing).  *But see Cano v. Taylor*, 739 F.3d 1214, 1220 (9th Cir. 2014) (indicating that exhaustion is proper when a claim is exhausted between the filing of the original complaint and the filing of the amended complaint).

---

[3] RLUIPA incorporates the PLRA's exhaustion requirements. *Fuqua v. Ryan*, 890 F.3d 838, 844 (9th Cir. 2018).

When prison officials move for summary judgment based on exhaustion, they bear the initial burden of showing that there was an available administrative remedy and that the plaintiff did not exhaust that administrative remedy. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). If prison officials make such a showing, a prisoner can overcome the exhaustion defense by producing evidence showing that the administrative remedies were effectively unavailable to him. *Id*. If the evidence shows that the remedies were available and the inmate failed to properly exhaust such remedies, the inmate's claims must be dismissed. However, a prisoner may be excused from exhausting when prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016).

As to Plaintiffs Mohamed and Roberts, the record is clear that they submitted grievances through the standard process (by placing it in the grievance box rather than handing it to staff) yet failed to appeal those grievances, resulting in a failure to exhaust administrative remedies. Plaintiffs do not offer a valid basis to set these procedural requirements aside. Plaintiffs fail to point to sufficient evidence that could lead a fact-finder to conclude that these Plaintiffs were at the time blocked from proceeding with the grievance appeal process or intimidated out of appealing by Defendants. This serves as an independent basis to dismiss the claims of Plaintiffs Mohamed and Roberts. Plaintiff James did not exhaust his administrative remedies until after the Amended Complaint was filed in this case. Accordingly, his claims are barred by the PLRA. *See Cano, supra.* It is irrelevant to this determination that Plaintiff James filed similar grievances prior to Ramadan 2018. The claims of Livingston and Lao are not dismissed for failure to exhaust administrative remedies due to the possibility, based on a

genuine dispute of material fact, that Defendants intimidated Plaintiffs or misrepresented what was needed to advance their grievance. *See Ross, supra.*

### 2. Mootness of RLUIPA Claims

Defendants next argue that Plaintiffs' RLUIPA claims are moot given the events after Ramadan 2018.

Plaintiffs' RLUIPA claims seek only injunctive and declaratory relief. *See* Dkt. #59 at 26 and 28. "An inmate's release from prison while his claims are pending generally will moot any claims for injunctive relief relating to the prison's policies unless the suit has been certified as a class action." *Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (quoting from *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995)). "The same is true for claims seeking declaratory relief." *Id.* (citing *Rhodes v. Stewart*, 488 U.S. 1, 2–4 (1988)).

Plaintiffs Mohamed, Livingston, and Lao have been released from prison. Plaintiff Roberts signed up for and eventually participated in the 2019 Ramadan meal program. Plaintiff James' request for a gluten-free Ramadan meal in 2019 was accommodated.

Defendants address certain narrow exceptions to mootness. Dkt. #73 at 13–14. The Court finds that these exceptions do not apply here. Plaintiffs do not meaningfully contest that Plaintiffs Mohamed, Livingston, and Lao's RLUIPA claims are moot. For Plaintiffs Roberts and James, Plaintiffs essentially argue that the barriers to the sign-up process continue to be inappropriate, but present no argument that these claims are not now moot for these two individual Plaintiffs. The Court agrees with Defendants that ordering injunctive relief is pointless for these Plaintiffs now that they have been added to the Ramadan list and otherwise accommodated. *See* Dkt. #73 at 14 (citing *Saddiq v. Ryan*, 703 Fed. Appx. 570, 571 (9th Cir. 2017)). Declaratory relief is also moot as there is no clear potential for further harm to these

Plaintiffs. This is not a class action, and other exceptions to a finding of mootness do not apply.

Given all of the above, the Court will dismiss Plaintiffs' RLUIPA claims as moot. The Court need not address any remaining RLUIPA arguments.

### 3. Eighth Amendment Claims

The Eighth Amendment's prohibition on cruel and unusual punishment prevents government officials from acting with deliberate indifference to a prisoner's health and safety, *see Hope v. Pelzer*, 536 U.S. 730, 737-38, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002), or serious medical needs, *see Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). To prove a violation of the Eighth Amendment, a plaintiff must show that the defendant: (1) exposed her to a substantial risk of serious harm; and (2) was deliberately indifferent to her constitutional rights. *See Farmer v. Brennan*, 511 U.S. 825, 837, 842, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994).

Under the Eighth Amendment, "[p]rison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). "While prison food need not be 'tasty or aesthetically pleasing,' it must be 'adequate to maintain health." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) (quoting *LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir. 1993)). Defendants argue:

> However, the Eighth Amendment is not violated when prison officials place reasonable conditions on receiving meals. *Freeman v. Berge*, 441 F.3d 543, 545 (7th Cir. 2006).
>
> The four Plaintiffs who were not on the Ramadan menu were not denied food adequate to meet their nutritional needs because each had the option to get mainline food. To the extent they argue the mainline meals did not meet their needs because of their sincerely

> held religious beliefs, that claim is more properly analyzed under
> RLUIPA or the First Amendment, not the Eighth Amendment.

Dkt. #73 at 18. The Court agrees with Defendants' assessment. Given the record as to what food was and was not available, Plaintiffs have failed to make a sufficient showing that Defendants failed to provide adequate food or otherwise exposed Plaintiffs to a substantial risk of serious harm. Plaintiffs were provided access to food and refused it on religious grounds. Plaintiffs' claims are more properly analyzed under the First Amendment.

### 4. First Amendment Free Exercise Claim

For a prisoner to satisfy a First Amendment free exercise claim, he "must show the [defendant] burdened the practice of [his] religion, by preventing him from engaging in conduct mandated by his faith, without any justification reasonably related to legitimate penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997) (citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254 (1987). The Turner court provided four factors to guide reviewing courts in determining the reasonableness of the regulation. "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Id*. (citations omitted). A second factor is "whether there are alternative means of exercising the rights that remain open to prison inmates." *Id*. at 90. The third consideration is the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and the allocation of prison resources generally." *Id*. Last, the "absence of ready alternatives is evidence of the reasonableness of the regulation." *Id*.

The Court finds that questions of fact preclude summary judgment dismissal of this claim on substantive grounds. While there is undoubtedly a valid, rational connection between requiring inmates to sign up for Ramadan meals and the legitimate governmental interest in putting together the correct number of Ramadan meals (and not wasting money or food), the

Court cannot find as a matter of law that there is a rational justification for Defendants' artificially early deadline to sign up for Ramadan, or that Defendants could not have accommodated the various unusual circumstances of these Plaintiffs necessitating late sign-ups. Further, it is a question of fact whether or not Plaintiffs had alternative means to participate in Ramadan. The Court will not now rule as a matter of law that it was or was not practical for Plaintiffs to fast during the day and then purchase sufficient food from the commissary to satisfy their dietary needs during the evening. The free exercise claims of Plaintiffs Livingston and Lao cannot be dismissed on this basis, and would proceed to a jury except for the reasons stated below.

**5. Equal Protection Clause Claim**

To state an actionable equal protection claim a prisoner must show the defendant denied him a reasonable opportunity to pursue his faith compared to prisoners of other faiths, and that the denial was intentional. *Freeman v. Arpaio*, 125 F.3d 732 (9th Cir. 1997), *overruled in part by Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008).

Defendants argue there is no evidence of differential treatment of Muslim inmates from others similarly situated, and that there is no evidence that the sign-up process for Ramadan is more onerous than the sign-up process for Jewish Passover or other religious events. *See* Dkt. #73 at 22; Dkt #82 at 15. Plaintiffs argue that inmates who sign up for Ramadan and for Passover are treated differently. Plaintiffs point to a single event:

> A few years ago, the Department experienced 1,800 individuals who signed up for Passover." Simpson Dep., Ex. 29, 59:14-15. But instead of scrutinizing and rejecting those individuals because they did not sign up ahead of time or pass any religious tests, the Department of Corrections simply provided the 1,800 all-of-a-sudden Jewish inmates Passover meals. Simpson Dep., Ex. 29, 59:14-15; 60:13-62:14. This created "a third of a million dollars divot" into the Department of Corrections' budget. Simpson Dep.,

> Ex. 29, 59:15-16. And yet, despite that, the meals were provided,
> no questions asked. Simpson Dep., Ex. 29, 59:15-16; 60:13-62:14.
> This unequal treatment violates the Equal Protection Clause.

Dkt. #85 at 20.

On Reply, Defendants urge the Court to look past ambiguous deposition testimony relied on by Plaintiffs and to compare the actual Ramadan and Passover sign-up processes as stated in memos. The Court has done so and finds that Plaintiffs have failed to point to sufficient evidence of differential treatment to create a question of fact. The criteria for inmates to sign up for Ramadan and Passover are essentially the same. Both require participation in religious activities or receiving a religious (halal/kosher) diet, and both have a two-week sign up period. *See* Dkt. #75-1 at 120-21. Both memos are issued well in advance of the actual holiday period. Defendants also point out that the above one-time increase in the number of inmates signing up to participate in Passover was in fact due to there being no eligibility criteria at the time, that this was addressed with the addition of eligibility requirements comparable to those now in place for Ramadan, and that those requirements have been in place for the last three Passover observances. Dkt. #85 at 15 n.3 (citing Dkt. #84 ("Simpson Dec."), at ¶¶ 3-7). Given this record, no reasonable jury could conclude that the sign-up process in 2018 was more onerous for Ramadan than Passover. Plaintiffs point to nothing else to support this claim. Accordingly, this claim will be dismissed.

### 6. Qualified Immunity Defense

Plaintiffs seek damages against all Defendants in their individual capacity (except Stephen Sinclair) for violations of Plaintiffs' constitutional rights.

42 U.S.C. § 1983 provides a cause of action against persons acting under the color of state law who have violated rights guaranteed by the Constitution. However, "[q]ualified

immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). To be clearly established, a right must be sufficiently clear "that every reasonable official would have understood that what he is doing violates that right." *Id.* In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* The plaintiff bears the burden of proving that the right was clearly established. *See Davis v. Scherer*, 468 U.S. 183, 197 (1984).

Plaintiffs do not address qualified immunity in Response to Defendants' Motion, instead directing the Court to review arguments made in Plaintiffs' own Motion. In that Motion they first point to their Eighth Amendment rights to adequate food. Dkt. #79-1 at 22. The Court has already dismissed Plaintiffs' Eighth Amendment claims, so the Court will not address whether Defendants would be entitled to qualified immunity on those claims. Next, Plaintiffs argue that "Defendants have had decades of notice from the Ninth Circuit that the Constitution requires that they must accommodate the religious dietary needs of their inmates." *Id.* at 23 (citing cases). Plaintiffs state that "a reasonable official would realize that the actions taken by Defendants'—forcing Plaintiffs to choose between their sincerely-held religious beliefs and food—would thus violate clearly established law." *Id.* at 23–24.

Plaintiffs paint with too broad a brush. The record fails to show Defendants denied Plaintiffs *any* access to food or *any* access to a religious diet. This case is really about the adequacy of a sign-up process. Defendants say there is no clearly established case law holding that prisons violate the First Amendment by requiring inmates to sign up in advance to participate in Ramadan. Dkt. #82 at 16 (citing *Resnick v. Adams*, 348 F.3d 763, 771 (9th Cir.

2003).[4]  The Court agrees.  Any right Plaintiffs had to a more streamlined or forgiving sign-up process was not clearly established.  Accordingly, all Defendants sued in their individual capacity are entitled to qualified immunity as a matter of law.  The remaining Plaintiffs Livingston and Lao cannot bring claims for damages against these Defendants under §1983.

### 7. Remaining Claims

As the Court understands it, Defendants have moved to dismiss almost all claims as either moot, legally unfounded based on the record, or because Defendants are subject to qualified immunity.  What remains after the above rulings are the §1983 claims for damages brought by Plaintiffs Livingston and Lao under the First Amendment's Free Exercise clause as against Defendants Sinclair, Stewart, Dolan, Obeland, and Sherman sued in their official capacity.

However, neither a state nor a state official acting in his or her official capacity is a "person" for purposes of § 1983 liability in an action for monetary relief. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989) and *Lapides v. Board of Regents*, 535 U.S. 613, 122 S. Ct. 1640, 152 L. Ed. 2d 806 (2002).  Accordingly, these claims are also properly dismissed.  No claims remain.

### D. Plaintiffs' Motion for Summary Judgment

Plaintiffs also move for summary judgment.  Dkt. #79.  Having dismissed all of Plaintiffs' claims for the various reasons above, the Court denies this Motion.

---

[4] Defendants also argue that there is "no published case law that suggests Defendants were required to create a therapeutic Ramadan diet for James or that they violated the First Amendment by declining to offer a gluten free Ramadan meal in 2018."  Dkt. #82 at 16 (citing *Payne v. Doe*, 636 Fed App'x 120, 124 (3d Cir. 2016) (affirming dismissal of First Amendment claims based on inmate's allegations that he was forced to choose between therapeutic and religious diet during Ramadan); *Leggett v. Solomon*, No. 14-CT-3228-FL, 2017 WL 421915, at *4 (E.D.N.C. Jan. 31, 2017) (dismissing First Amendment claim based on policy that provided inmates who were on regular diets a supplemental snack bag but denied inmates on a special diet such a snack bag)).

# IV. CONCLUSION

Having reviewed the relevant briefing, attached declarations, and the remainder of the record, the Court hereby finds and ORDERS:

1) Defendants' Motion for Summary Judgment (Dkt. #73) is GRANTED as stated above. All of Plaintiffs' claims are DISMISSED.

2) Plaintiffs' Motion for Summary Judgment (Dkt. #79) is DENIED. Defendants' Motion to Strike contained in responsive briefing is DENIED as MOOT.

3) This case is CLOSED.

DATED this 6th day of September 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE